UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIE CURTIS,

        Plaintiff,

v.

UNKNOWN SIMON et al.,

        Defendants.
_____/

Case No. 1:22-cv-703

Honorable Sally J. Berens

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues ICF Prison Counselor Unknown Simon and Michigan Parole Board (MPB) members Timothy Flanagan and Crissa Blankenburg.

Plaintiff is serving a consecutive string of sentences imposed in two separate criminal prosecutions. On June 30, 2005, Plaintiff entered a guilty plea to one count of first-degree home

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. Feb. 10, 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

invasion. *People v. Curtis*, No. 05-00421-FH (Ingham Cnty. Cir. Ct. Case No. 05-00421-FH) Case Events, https://courts.ingham.org/CourtRecordSearch/ (search Last Name "Curtis," First Name "Willie," Date of Birth "9/21/1984," select Criminal/Traffic; select Case Number "05-00421-FH; select View) (last visited Oct. 5, 2022). The court sentenced Plaintiff to 3 to 20 years' imprisonment.

Plaintiff was paroled on August 23, 2007. *See* Op. at 2, *Curtis v. Gidley*, No. 1:15-cv-129 (W.D. Mich., Feb. 27, 2015), (ECF No. 7). While on parole, Plaintiff committed first-degree retail fraud. On December 19, 2011, Plaintiff entered a guilty plea to that offense. *People v. Curtis*, No. 11-10160-FH (Kent Cnty. Cir. Ct.) Register of Actions, https://www.accesskent.com/CNSearch/appStart.action (search First Name "Willie," Last Name "Curtis," Birth Year "1984," select criminal; select Case Number "11-10160-FH) (last visited Oct. 5, 2022). The court sentenced Plaintiff to 1 year, 2 months to 5 years' imprisonment, to be served consecutively to his Ingham County sentence.

Based on these sentences, Plaintiff's earliest release date—the date he was first eligible for parole—was March 24, 2013. MDOC Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=492630 (last visited Oct. 5, 2022). Plaintiff's maximum discharge date—the date upon which the MDOC must release him—is August 16, 2029.

Plaintiff alleges that on May 19, 2022, Defendant Simon stopped by his cell with a 30-day notice form and asked Plaintiff if he wanted to see the MPB.[2] (ECF No. 1, PageID.10.) Plaintiff

---

[2] In his complaint, Plaintiff references MDOC Policy Directive 06.05.104, which indicates that for a prisoner who is not serving a life sentence, the MPB "shall prepare and send to the prisoner a Notice of Intent to Conduct a Parole Board Interview and Prisoner Rights and Receipt form (CAX-227) at least 30 calendar days prior to the prisoner's parole interview date." *See* MDOC Policy

4

responded in the affirmative. (*Id.*) Defendant Simon told Plaintiff that he would have to waive his rights to 30 days' notice to see the MPB. (*Id.*) Plaintiff responded that he would not waive his rights. (*Id.*) Defendant Simon "got mad" and told Plaintiff that "he would personally see to it that [Plaintiff] would not be able to see the parole board unless [he] signed to waive [his] rights." (*Id.*) Plaintiff again refused to waive his rights and asked Defendant Simon for a copy of the 30-day notice form. (*Id.*) Defendant Simon responded that Plaintiff did not need a copy because "he was going to personally cancel" the MPB interview because Plaintiff refused to waive his rights. (*Id.*) Plaintiff contends that Defendant Simon did not: (1) read his rights to him; (2) tell him when the parole interview was scheduled; (3) allow Plaintiff to read the Notice of Intent form; and (4) provide a copy of the Notice of Intent. (*Id.*, PageID.11.)

On June 2, 2022, two officers escorted Plaintiff to a video visit. (*Id.*) When Plaintiff arrived at the video visit location, he saw Defendant Flanagan waiting on the screen ready to commence a parole interview. (*Id.*) Plaintiff told Defendant Flanagan that he was "surprised" because he had no idea that a parole interview had been scheduled. (*Id.*) He told Defendant Flanagan that he was not prepared for the interview because: (1) he did not have his relevant documents with him; (2) he was not given the chance to secure a family-representative's presence; and (3) he was not given 30 days to prepare for the interview. (*Id.*) Plaintiff asked for his interview to be rescheduled and told Defendant Flanagan that he did not want to waive any of his parole interview rights. (*Id.*) Plaintiff also told him what Defendant Simon had done and said regarding the Notice of Intent form. (*Id.*)

---

Directive 06.05.104 ¶ Q (eff. Apr. 1, 2022). Plaintiff has provided the Notice of Intent eventually provided to him as an exhibit to his complaint. (ECF No. 1-2, PageID.18.)

Defendant Flanagan denied Plaintiff's request to reschedule his interview. (*Id.*, PageID.12.) He told Plaintiff that he and Defendant Blankenburg had a duty to review Plaintiff's Notice of Intent form and that they would do so at a later time. (*Id.*) Plaintiff contends that he was forced to have his interview without the rights noted above. (*Id.*) On June 14, 2022, Defendants Flanagan and Blankenburg issued a parole decision, claiming that Plaintiff had agreed to waive his right to 30-day notice. (*Id.*) Plaintiff received that decision by mail on June 28, 2022. (*Id.*) He subsequently contacted Prison Counselor Sanborn (not a party) and other staff to obtain a copy of the Notice of Intent form. (*Id.*) On July 20, 2022, Sanborn gave Plaintiff a copy of the Notice of Intent form, confirming that Plaintiff did not agree to waive his rights. (*Id.*) Plaintiff avers this was the first time that he saw the Notice of Intent form. (*Id.*)

Based on the foregoing, Plaintiff asserts a First Amendment retaliation claim against Defendant Simon and Fourteenth Amendment procedural due process claims against all Defendants. (*Id.*, PageID.9.) He seeks $50,000.00 in compensatory damages and $50,000.00 in punitive damages from each Defendant, as well as injunctive relief in the form of a Court order directing a parole re-hearing. (*Id.*, PageID.14.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. First Amendment Retaliation Claim

Plaintiff suggests that Defendant Simon retaliated against him by threatening to not let Plaintiff interview with the parole board because Plaintiff would not waive his 30-day notice rights. (ECF No. 1, PageID.9.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him

7

that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.*

### 1. Protected Conduct

"[T]he right of freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all." *Wooley v. Maynard*, 430 U.S. 705, 714 (1977). In the context of prison, of course, the right to speak or not speak is necessarily constrained. The Supreme Court "has repeatedly recognized the need for major restrictions on a prisoner's rights." *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 129 (1977). Thus, an inmate "retains [only] those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The United States Court of Appeals for the Second Circuit, in *Burns v. Martuscello*, 890 F.3d 77 (2d Cir. 2018), considered whether declining to speak could be protected conduct for a prisoner. The *Burns* panel concluded that refusing to provide false information and refusing to serve as an informant on an ongoing basis were not inconsistent with the plaintiff's status as a prisoner and, accordingly, were protected by the First Amendment. *Id*. at 88–93. *But see Dixon v. Gonzales*, No. 1:09-cv-172, 2009 WL 3416005, at *3 n.1 (E.D. Cal. Oct. 21, 2009) ("To the extent that Plaintiff is attempting to state a claim for retaliation based upon a right to not speak (i.e., not to 'snitch'), that claim also fails."). Here, where the MDOC provides the prisoner the opportunity to sign off on a notice of intent or, alternatively, to insist on a 30-day notice period, it would seem anomalous to say that a prisoner's choice would not be "inconsistent with his status as a prisoner." Therefore, the Court concludes Plaintiff's refusal to sign off on the waiver of his notice rights is protected conduct.

### 2. Adverse Action & Retaliatory Motive

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Finally, to satisfy the third element of a retaliation claim, a prisoner-plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff contends that Defendant Simon's threat to cancel Plaintiff's parole board hearing constitutes an adverse action. Although Defendant Simon's threat to cancel Plaintiff's parole board hearing occurred after Plaintiff refused to waive the 30 days' notice, it was because Plaintiff did not agree to waive the 30-day notice period that Defendant Simons informed Plaintiff that his parole board hearing—which was scheduled to occur within less than thirty days—would necessarily be cancelled.[3] Indeed, under these circumstances, any reasonable person would expect that ***not*** waiving a 30-day notice requirement would result in the cancellation of an interview scheduled in less than 30 days. The Court, therefore, concludes that the threat to cancel a parole board interview scheduled within less than 30 days, in response to a refusal to waive a 30-day notice requirement, would not deter any person of ordinary firmness from refusing to waive a 30-day notice requirement. Plaintiff has failed to allege facts from which the Court might infer that

---

[3] The Court notes that when Defendant Simon sought to have Plaintiff waive the 30 days' notice of the parole hearing, the parole board hearing was already scheduled to occur within less than 30 days. Plaintiff does not allege that Defendant Simon was the prison official who had scheduled the parole board hearing for that date. Indeed, it appears that Defendant Simon was simply tasked with delivering the relevant 30-day notice form to Plaintiff.

9

Defendant Simon took a retaliatory adverse action. Accordingly, Plaintiff has failed to state a claim for violation of his First Amendment rights.

### B.   Fourteenth Amendment Procedural Due Process Claims

Plaintiff suggests that Defendants violated his Fourteenth Amendment procedural due process rights in several ways, including the following: by not providing the Notice of Intent form for the June 2, 2022, parole interview; by not providing the 30-day notice period prior to holding his parole interview; by not permitting the interview to be rescheduled in light of the lack of notice; and by falsely stating that Plaintiff agreed to waive his 30-day notice rights. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Id.* at 7, 11; *Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). Rather, a liberty interest is present only if state law entitles an inmate to release on parole. *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164–65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole. The Sixth Circuit reiterated the continuing

validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011). In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole. *See id.*; *see also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999).

Under this authority, Plaintiff has no reasonable expectation of liberty until he has served his maximum sentence. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11.

Because there is no liberty interest in parole in Michigan, Plaintiff's allegations that Defendants interfered in the parole process do not implicate a federal right. At best, Plaintiff alleges that Defendants failed to properly follow proper state procedure. Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that multiple Defendants interfered with or violated state procedures relating to parole fail to raise a cognizable federal due process claim. His Fourteenth Amendment procedural due process claims will, therefore, be dismissed.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   October 13, 2022                         /s/ Sally J. Berens
                                                  SALLY J. BERENS
                                                  U.S. Magistrate Judge